UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cr-80112-RLR

UNITED STATES OF AMERICA

vs.

MARCOS GEOVANNY BELTRE OLIVO,

      Defendant.
_____/

## ACKNOWLEDGMENT OF OFFENSE ELEMENTS AND STIPULATION AS TO FACTUAL BASIS FOR GUILTY PLEA

I, MARCOS GEOVANNY BELTRE OLIVO, agree that the facts set forth below are true and accurate and that the United States could prove these facts against me at trial. I am pleading guilty to the single count in the Indictment charging me with conspiracy to distribute, and possess with intent to distribute, a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 846; in which it is further alleged that the controlled substance in the conspiracy attributable to the defendant, as a result of the defendant's own conduct, and the conduct of other conspirators reasonably foreseeable to the defendant is 40 grams or more of a mixture and substance containing N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, that is, fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B)(vi). The controlled substances distributed during the conspiracy also contained a mixture and substance containing a detectable amount of N-Pyrrolidino Protonitazene, a controlled substance analogue as defined in Title 21, United States Code, Section 802(32)(A), and that each defendant knew the mixture and substance was intended for human consumption as provided in Title 21, United States Code, Section 813, in violation of Title 21, United States Code, Section 841(b)(1)(C).

## NATURE OF THE CHARGE

I am aware of and understand the nature of the charge to which I am pleading guilty. I have discussed with my attorney the charges and what the prosecutor must prove to convict me.

**Conspiracy to distribute a controlled substance (Fentanyl / N-Pyrrolidino Protonitazene), in violation of 21 U.S.C. §§ 841(a)(1), 846, 841(b)(1)(B)(vi), and 841(b)(1)(C)**

I understand that the United States must prove the following elements of the offense beyond a reasonable doubt:

First: Two or more people in some way agreed to try to accomplish a shared and unlawful plan to distribute a controlled substance;

Second: The defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third: The controlled substance was 40 grams or more of a mixture or substance containing a detectable amount of fentanyl, its salts, isomers, or salts of its isomers.

Fourth: The controlled substance was N-Pyrrolidino Protonitazene, a controlled substance analogue as defined in Title 21, United States Code, Section 802(32)(A), and that each defendant knew the mixture and substance was intended for human consumption as provided in Title 21, United States Code, Section 813, in violation of Title 21, United States Code, Section 841(b)(1)(C).

A "conspiracy" is an agreement by two or more persons to commit an unlawful act. In other words, it is a kind of partnership for criminal purposes. Every member of the conspiracy becomes the agent or partner of every other member.

The Government does not have to prove that all the people named in the indictment were members of the plan, or that those who were members made any kind of formal agreement. The heart of a conspiracy is the making of the unlawful plan itself, so the Government does not have to prove that the conspirators succeeded in carrying out the plan.

2

A person may be a conspirator even without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators.

If the defendant played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan – and willfully joined in the plan on at least one occasion – that's sufficient for you to find the Defendant guilty.

To be found guilty of distributing an analogue controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), the United States must prove the following: (1) the defendant knowingly possessed a controlled substance, even if he did not know its identity; (2) the defendant intended to distribute the controlled substance; (3) the substance has a chemical structure substantially similar to the chemical structure of a controlled substance classified under Schedule I or II; (4) the substance has an actual, intended, or claimed stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than such effect produced by a Schedule I or II controlled substance; and (5) the substance was intended for human consumption

## STIPULATED FACTS

Beginning in early 2024, agents with DEA, FBI, USPIS, and HSI, began investigating the mailing of controlled substances being mailed from South Florida to locations across the United States. The pills were purchased on web sites found on the open web and dark web. The parcels contained various types of pressed pills purporting to be legitimate pharmaceutical pills. The pills often contained active ingredients that were different from what would be found in pills of the same shape, size, color and marking. Agents later learned that the pills were manufactured/pressed from powders containing controlled substances.

3

Agents initially determined that Josue Balaguer (BALAGUER) and Marcos Beltre Olivo (BELTRE), among others, were mailing the drug parcels for an international drug trafficking organization. Agents conducted physical and electronic surveillance and determined that BALAGUER and BELTRE were mailing drug parcels. Agents also collected images of BALAGUER and BELTRE mailing parcels. Thereafter, agents obtained warrants to search the residence of BALAGUER and BELTRE and the premises of Joel Medina (MEDINA) where BALAGUER and BELTRE stored a bulk supply of pills and prepared drug parcels for mailing.

On September 11, 2024, agents executed search warrants at residences on Scott Street in Hollywood, Florida (hereinafter "Scott Street") and on Liberty Street in Hollywood, Florida (hereinafter "Liberty Street"). Agents were aware that BALAGUER lived at Liberty Street and BELTRE lived at Liberty Street after moving there from Scott Street during late May 2024. Agents were also aware, based on traditional surveillance and tracking, that both BALAGUER and BELTRE went to Scott Street on a regular basis and would stay for significant periods of time. BALAGUER's car often traveled to Scott Street before traveling to multiple U.S. Post Office locations.

During the search at 2539 Liberty Street, agents located a bedroom containing personal items and documents belonging to BELTRE. Within the bedroom, agents located over 1000 unused USPS mailer envelopes, a box of pill bottles, a box of pill bottle lids, and a large box filled with purported Belbien which is the brand name of a Schedule IV controlled substance.

Agents searched the interior and exterior of 2318 Scott Street. In the backyard shed of the premises, agents found an extremely large number of pills that were consistent in appearance with pressed pills recovered during this investigation. Agents also discovered an industrial pill press and packaging machine. The pills were submitted to the DEA Southeast Laboratory for testing and

later confirmed the presence of multiple controlled substances. Below are images of the blister pack packaging machine, mailers, mailer labels, and containers filled with pressed pills.





MEDINA was residing at Scott Street and was present during the search. He admitted to knowing about the drugs in the shed and receiving $1000 per month for BELTRE and BALAGUER to use the shed. MEDINA had also taken pills from the shed which were located inside his residence.

The following is an image of the pressed pills and powders recovered from the shed at the Scott Street Address:



The DEA Southeast Lab conducted analysis of the pills recovered during the searches and pills recovered from mailed parcels. They contained the following types of controlled substances, fentanyl, heroin, methamphetamine, protonitazene, N-pyrrolidino protonitazene, N,N-Dimethylpentylone, bromazolam, alprazolam, metonitazene, and p-fluorofentanyl. The pills contained more than 40 grams of a mixture and substance containing fentanyl.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 2/12/25     By: _____
                      DANIEL E. FUNK
                      ASSISTANT UNITED STATES ATTORNEY

Date: 2/12/25     By: _____
                      NAYIB HASSAN
                      ATTORNEY FOR DEFENDANT

Date: 2/12/25     By: /s/ Marcos Beltre
                      MARCOS GEOVANNY BELTRE OLIVO
                      DEFENDANT