UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

CASE NO: 9:24-CR-80112-RLR

v.

**MARCOS BELTRE OLIVO,**
          **Defendant.**

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, MARCOS BELTRE OLIVO, by and through undersigned counsel, and respectfully moves this Honorable Court for a downward departure from the advisory United States Sentencing Guidelines. This motion is based on Mr. Beltre Olivo's early and extraordinary acceptance of responsibility, significant and ongoing medical issues, substance abuse history warranting treatment, and strong community and familial support.

In support of this Motion, Defendant states as follows:

### Extraordinary Acceptance of Responsibility

Mr. Beltre Olivo demonstrated exceptional acceptance of responsibility at the earliest possible stage. Prior to even being informed he was a target of investigation, Mr. Beltre Olivo voluntarily reached out to the Government through undersigned counsel, expressing a clear and unequivocal desire to accept responsibility for his conduct.

As stated in the Objections to the Presentence Investigation Report, Mr. Beltre Olivo self-surrendered and cooperated with the Government from the inception. At no time did he attempt to evade law enforcement or challenge the Government's detainer. His pre-indictment outreach and voluntary surrender reflect a high level of remorse and accountability that goes beyond what is typically accounted for under U.S.S.G. § 3E1.1.

Therefore, pursuant to U.S.S.G. § 5K2.0, which authorizes departures based on factors not adequately considered by the Sentencing Commission, a downward departure is warranted for this extraordinary demonstration of responsibility.

### Serious and Ongoing Medical Conditions

As detailed in paragraphs 92–94 of the PSR, Mr. Beltre Olivo suffers from multiple chronic and severe health conditions. He has undergone two open heart surgeries—one in 2010 at Jackson Hospital and another in 2012 at the University of Miami (formerly Cedars Hospital). While in custody, he has experienced at least one episode of chest pain and shortness of breath. He is also afflicted with ulcers, vertigo, and tinnitus, the latter of which causes involuntary loss of bodily functions.

These significant and ongoing medical issues are difficult to manage in a custodial setting and justify a departure under U.S.S.G. § 5H1.4, which permits downward departure where a defendant's physical condition is "extraordinary."

### Strong Community and Family Support

Mr. Beltre Olivo is not alone in his journey toward rehabilitation. His mother and other close family members have been actively involved in his case from the beginning. His mother personally accompanied him to the U.S. Attorney's Office when he self-surrendered. Undersigned counsel has maintained weekly communication with his family, and they remain committed to supporting Mr. Beltre Olivo through this process and beyond.

### Substance Abuse History and Request for RDAP Placement

Mr. Beltre Olivo has also struggled with chronic substance abuse since the age of nineteen, having used marijuana daily—approximately five marijuana cigarettes per day—for over a

decade. He recognizes the need for intervention and respectfully requests placement in the Residential Drug Abuse Program (RDAP) while in custody.

While not in and of itself a basis for downward departure, this history supports the need for sentencing alternatives focused on rehabilitation. It also underscores the sincerity of Mr. Beltre Olivo's efforts to change and his commitment to addressing the underlying causes of his criminal conduct.

### **Sentencing Considerations**

The Sentencing Reform Act as revised by <u>Booker</u> requires a sentencing Court to consider Guidelines ranges, see 18 U.S.C.A. §3553(a)(4) (Supp.2004), but it permits the Court to tailor the sentence in light of other statutory concerns as well, see §3553(a). Additionally, section 3553(a)(2) makes the following consideration:

(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) To afford adequate deterrence for criminal conduct;
(C) To protect the public from further crimes of the Defendant; and
(D) To provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, §3553 (a) further directs sentencing courts to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the Defendant" (§3553(a)(1));
(2) "the kinds of sentences available" (§3553(a)(3)); and
(3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§3553(a)(6)).

The directives of <u>Booker</u> and §3553(a) make clear that courts no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings and merits of the majority in <u>Booker</u>, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing to courts to consider all of the §3553(a) factors, many

of which the guidelines either reject or ignore." United States v. Ranum, 353 F.Supp. 2d 984, 985-86 (E.D. Wisc. Jan 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." United States v. Jaber, F.Supp.2d 2005 WL 605787*4 (D.Mass. March 16, 2005)(Gertner, J.) See Also United States v. Ameline, 400 F.3d 646, 655,56 (9th Cir. Feb.9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), rehearing en banc granted, 401 F.3d 1007 (9th Cir. 2005)

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, the logic compels the conclusion that the sentencing judge, after considering recited factors (including guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise –if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed- its opinion would surely say so. Booker, 125 S.Ct. at 791 (Scalia, J., dissenting in part.

Likewise, if the remedial majority thought the guidelines had to be given "heavyweight", its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section §3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the §3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in §3553(a), these statutory factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part)(arguing that since §3553(a) requires sentence be no greater than necessary to meet four

purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

### Recommended Sentence and Mitigating Factors

Considering all of the factors set forth under 18 USC §3553, a sentencing reduction from a guideline sentence for Mr. Beltre Olivo is entirely reasonable. For starters, the nature and circumstances of Mr. Beltre Olivo warrant such a sentence. In particular, Mr. Beltre Olivo medical conditions show that even though he is young, his life expectancy may be lower than others.

Further still, 18 USC §3553(b)(1) provides: " Except as provided in paragraph (2), the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there is exists… a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." On this point, Mr. Beltre Olivo provided substantial assistance in the Government's investigation from the very inception, and this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines; and accordingly, this assistance should result in a sentence lower than that described in subsection (a)(4). Along these lines, Mr. Beltre Olivo promptly and fully cooperated with the Government agents involved in his instant arrest.

Based on the foregoing reasons, together with additional reasons that will be presented at Sentencing, a downward departure from a guideline sentence is entirely reasonable.

**Respectfully submitted,**

*/s/ Nayib Hassan*

**Nayib Hassan, Esq., (Fla Bar No. 20949)**
**Attorney for Defendant**
**LAW OFFICES OF NAYIB HASSAN, P.A.**
**6175 NW 153 St., Suite 209**
**Miami Lakes, Florida 33014**
**Tel. No.: 305.403.7323**
**Fax No.: 305.403.1522**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of July, 2025, the undersigned electronically filed the foregoing document, Sentencing Memorandum, with the Clerk of the Court using CM/ECF.

*/s/ Nayib Hassan*

**Nayib Hassan, Esq., (Fla Bar No. 20949)**
**Attorney for Defendant**